IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHENKEL UNITED CHURCH OF CHRIST | : : : | |
| | : | CIVIL ACTION |
| v. | : : | NO. 09-1823 |
| NORTH COVENTRY TOWNSHIP | : | |

**SURRICK, J.**                                                                                        NOVEMBER 13, 2009

## MEMORANDUM

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. No. 10.) For the following reasons, the Motion will be granted.

### I. BACKGROUND

Plaintiff Shenkel United Church of Christ (the "Church") is a Pennsylvania non-profit corporation that owns and operates a small, rural church in North Coventry Township, Pottstown, Pennsylvania (the "Township"). (Am. Compl. ¶ 1.) The Church, which was organized in 1837, describes itself as "a faith-based Christian organization . . . [that] follows and practices the teachings of Jesus Christ as reflected in Scripture." (*Id.* ¶ 5-6.) Included in the practices and teachings are "mandates to care for the needy of our society, especially the poor and homeless, and to adhere to Matthew's directive, 'you shall love your neighbor as yourself.'" (*Id.* ¶ 6 (quoting *Matthew* 22:39).) One way that the Church adheres to these mandates is by providing shelter to homeless people during the winter months. (*Id.* ¶¶ 7-8.) In fact, the Church asserts that "[p]roviding temporary, emergency shelter for people in need is a core religious ministry for [the Church]." (*Id.* ¶ 7.) For a number of years, the Church participated in "One Night at a Time," a

county-run program that involved providing shelter to homeless guests for one month during the winter. (*Id.* ¶ 9.) In 2005, the county ceased running One Night at a Time and opened a shelter at a state hospital. (*Id.*) The shelter at the hospital has not met the overall need for shelter in the Township during the winter months. (*See id.*) It is overbooked, maintains a long waiting list, and is located farther from the Township than the Church's facilities. (*Id.*)

In 2007, a group called Ministries for Main Street sought to address the inadequacies of the state-run program by coordinating with local churches to provide shelter for homeless people for one month during the winter. (*Id.* ¶ 10.) Several churches in the Pottstown area participated in the program by transporting homeless guests to and from participating churches, allowing the guests to remain in the churches from the hours of 10:00 p.m. and 7:00 a.m., and providing night-long supervision by two adults. (*Id.*) The Church, whose facilities consist of a main church building, an attached office, an attached community hall, and a cemetery, decided to participate in the program in the 2007-2008 winter. (*Id.* ¶¶ 1, 11.) In anticipation of participating in the Ministries for Main Street program, the Church notified the Township's Manager that it would be offering shelter to homeless people during one month of the winter. (*Id.* ¶ 11.) In response, the Township's Manager informed the Church that use of the Church's facilities as a homeless shelter would violate the Township's zoning laws and building code and that the Church would need to apply for and obtain a variance in order to use its facilities as it desired. (*Id.* ¶¶ 12-13.) By letter dated December 10, 2007, the Township's Zoning Officer, Deborah Russo,[1] informed the Church that:

---

[1] The Church named Russo as a Defendant in the original Complaint. (*See* Compl. ¶ 3.) When the Church amended the Complaint, it removed Russo as a party. (*See generally* Am. Compl.)

> After inspecting the [C]hurch facilities on Saturday, December 7, 2007, we found that the Church, which is an assembly occupancy under A-3 in the building code, is in compliance. However, an A-3 occupancy does not include sleeping arrangements. In order to accommodate sleeping in your facility, the occupancy class would have to be changed to residential. To allow the residential occupancy use, the building would have to be sprinkled. There is an exception, however, under the ACT 45 which exempts R-3 occupancies from the sprinkler requirement. To meet this exception, the use would have to be defined as a congregate living facility which houses sixteen (16) or fewer people at all times.
>
> The Church, under the township zoning ordinance, is in the RR (Rural Residential) district. Because of the assembly use of the [C]hurch and the proposed temporary homeless shelter use, a variance is required for zoning relief to allow both uses in the same structure. The church can apply for a variance at the township. . . .

(Doc. No. 10-4; *see also* Doc. No. 12 at 3.) In addition, the Township's Fire Marshal sent the Church a letter stating that the Pennsylvania Uniform Construction Act imposed different fire safety requirements on buildings zoned for assembly purposes and buildings zoned for residential purposes and that assembly zoned buildings cannot contain sleeping facilities. (*See* Doc. No. 10-5; *see also* Doc. No. 12 at 4.) Echoing the Zoning Officer's letter, the Fire Marshal informed the Church that even if it were to change its zoning designation from assembly to residential, it could accommodate at most 16 individuals because the facilities did not have fire sprinklers. (*See* Doc. No. 10-5.)[2] Several days later, the Zoning Officer sent a follow-up letter to the Church stating that the Township would not issue a notice of violation pending the outcome of the variance

---

[2] The Church does not refer to the Zoning Officer's December 10, 2007, letter or the Fire Marshal's December 10, 2007, letter in its Amended Complaint. However, the Township attaches both letters to its Motion to Dismiss. (*See* Doc. No. 10-4.) The Church does not dispute the authenticity of the letters; indeed, the Church relies on them in its Opposition to the Township's Motion to Dismiss. (*See* Doc. No. 12 at 3-4.) The Third Circuit has held that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1198 (3d Cir. 1993). Here, the actions taken by the Township in the letters are factual predicates to the claims alleged in the Amended Complaint. Accordingly, we will consider them.

application process.  (*See* Am. Compl. ¶ 14; *id.*, Ex. A.)  Because of the Township's position, the Church decided not to participate in the Ministries for Main Street program in the 2007-2008 winter. (Am. Compl. ¶ 12.)

The Church and the Township continued to negotiate through 2008.  (*See id.* ¶ 15.)  On October 2, 2008, the Township's Manager sent a letter to the Church stating that the Township maintained its position that the Church's use of its facilities as a temporary homeless shelter would require a variance.  (*Id.*)  Without conceding its position, the Church decided to file an application with the Zoning Hearing Board of North Coventry Township (the "ZHB") requesting a determination that it did not need a variance.  (Am. Compl. ¶ 17.)  Talks between the Church and the Township continued, and hearings on the Church's application were postponed on several occasions.  (*Id.* ¶ 18.)  On April 20, 2009, the Church filed the instant action.  (*See* Compl.)  On July 15, 2009, the Church withdrew its application and filed a First Amended Verified Complaint (the "Amended Complaint").  (*See* Am. Compl. ¶ 19.)

The Amended Complaint alleges that the Township's conduct violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*, the Free Exercise Clause of the First Amendment, and the Pennsylvania Religious Freedom Protection Act ("PRFPA"), 71 Pa. Cons. Stat. Ann. §§ 2401, *et seq*.  The Township now seeks to have the Complaint dismissed on the grounds that the Church's claims are unripe and not presently justiciable.

## II. LEGAL STANDARD

Ripeness is a justiciability doctrine that helps to define the boundaries of federal jurisdiction.  *See Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).  The function

of the ripeness doctrine is to prevent federal courts from "'entangling themselves in abstract disagreements'" that are created by "'premature adjudication.'" *Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). Like other justiciability doctrines, the ripeness doctrine "derives ultimately from the requirement in Article III of the United States Constitution that federal courts are only empowered to decide cases and controversies. 'Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint.'" *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535 (3d Cir. 1988) (quoting *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 n.12 (D.C. Cir. 1986)). "Ripeness is a matter of degree whose threshold is notoriously hard to pinpoint." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). When determining whether a case is ripe, courts must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149.

In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), the Supreme Court devised a two-prong test for determining ripeness in the context of land-use disputes. The first prong requires that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. The second prong requires that the plaintiff must have exhausted the state's procedures for obtaining just compensation for a taking. *Id.* at 194-95. *Williamson* involved a challenge to a regulatory taking. Where a land use dispute arises from constitutional claims that do not require just compensation, the second prong of *Williamson* does not apply. *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 (2d Cir. 2005); *see*

*also County Concrete Corp. v. Township of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (applying only the first prong of *Williamson's* ripeness test to as-applied substantive due process and equal protection claims); *Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1291 (3d Cir. 1993) (same). Thus, in as-applied First Amendment and RLUIPA claims arising from land use disputes, *Williamson's* prong-one ripeness standard governs. *See Murphy*, 402 F.3d at 350 (determining that "[a] First Amendment claim emanating from a land use dispute may be subject to the *Williamson* . . . prong-one ripeness test" and concluding that it is not "necessary to distinguish . . . RLUIPA claim[s] from the First Amendment claim[s] when it comes to [a] ripeness inquiry" in this context).

Analysis under the first prong of *Williamson* ensures that a claim is ripe because "[o]nly once a 'decision maker has arrived at a definitive position on the issue' has a property owner been inflicted with 'an actual, concrete injury.'" *County Concrete*, 442 F.3d at 159 (quoting *Williamson*, 473 U.S. at 192). The Third Circuit has observed that federal courts should not "become super land-use boards of appeals" because "[l]and-use decisions concern a variety of interests and persons" and "local authorities are in a better position than the courts to assess the burdens and benefits of those varying interests." *Sameric Corp. of Del. v. City of Philadelphia*, 142 F.3d 582, 598 (3d Cir. 1998). These considerations must be balanced with the fact that First Amendment free speech claims—particularly facial challenges—are subject to a relaxed ripeness standard. *Peachlum v. City of York*, 333 F.3d 429, 435 (3d Cir. 2003). Therefore, in the context of First Amendment claims, courts must cautiously avoid mechanical application of the *Williamson* prong-one ripeness test. *Murphy*, 402 F.3d at 348, 350-51. For instance, "[a] property owner will be excused from obtaining a final decision if pursuing an appeal to a zoning

6

board of appeals or seeking a variance would be futile." *Id.* at 348. Such scenarios may arise where "a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all [variance] applications will be denied." *Id.* (citing *Southview Assoc., Ltd. v. Bongartz*, 980 F.2d 84, 98-99 (2d Cir. 1992)).

## III.     ANALYSIS

The Township argues that the Amended Complaint should be dismissed on ripeness grounds because there has been no final decision regarding the Church's proposed use of its facilities. (Doc. No. 10-2 at 8.) In response, the Church does not contest the Township's assertion that no final decision has been reached. Rather, the Church insists that the prong-one ripeness test set forth in *Williamson* does not apply to its case and that the standard set forth in *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990), should control our analysis. (*See* Doc. No. 12 at 1, 7.)

### A.     **Applicable Ripeness Standard**

The Church asserts that *Williamson's* prong-one ripeness standard does not apply to its claims because "[t]his is not a land use case." (*Id.* at 1.) The Church argues that the proper standard is the refined ripeness test set forth by the Third Circuit in *Step-Saver*. The Third Circuit devised the *Step-Saver* analysis "to determine ripeness in the declaratory judgment context." *Pittsburgh Mack Sales & Serv. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009). The test asks three questions: (1) whether the parties' interests are sufficiently adverse; (2) whether the court can issue a conclusive ruling in light of potentially evolving factual developments; and (3) whether the decision will render practical help to the parties. *Step-Saver*, 912 F.2d at 647.

7

The Church argues that *Step-Saver* is appropriate because the Amended Complaint "seek[s] declaratory and injunctive relief of a pre-enforcement matter." (Doc. No. 12 at 1.) A fair reading of the Amended Complaint, however, makes clear that the Church is seeking relief from the application of Township ordinances—the complained of conduct arises from how the Township's Zoning Officer and Fire Marshal have applied the zoning regulations to the Church's proposed use of its facilities. (*See, e.g.*, Am. Compl. ¶¶ 29, 32, 35.) In other words, the Church is making an as-applied challenge to the Township ordinances under the First Amendment and the RLUIPA. Thus, although we question whether application of the *Step-Saver* standard would result in a different outcome, particularly since the first and second elements correlate strongly with the rationale behind the finality test, *see Murphy*, 402 F.3d at 348, we will nonetheless apply *Williamson's* prong-one ripeness standard.

In asking us to apply *Step-Saver*, the Church ignores persuasive authority that counsels in favor of applying *Williamson's* prong-one ripeness standard to land-use disputes arising from First Amendment and RLUIPA claims. *See Congregation Anshei Roosevelt v. Planning & Zoning Bd. of the Borough of Roosevelt*, No. 08-3907, 2009 U.S. App. LEXIS 16266 (3d Cir. July 22, 2009) (non-precedential), *aff'g* No. 07-4109, 2008 U.S. Dist. LEXIS 63994 (D.N.J. Aug. 21, 2008); *Grace Cmty. Church v. Lenox Township*, 544 F.3d 609 (6th Cir. 2008); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005). *Congregation Anshei*, *Grace Community Church*, and *Murphy* are each factually and procedurally very similar to the instant case. In *Congregation Anshei*, a Third Circuit panel found that a congregation's RLUIPA and state law claims were not ripe where a zoning board had determined that the congregation's use of its facilities as a residential school (a yeshiva) violated the borough's zoning ordinances. 2008

8

U.S. Dist. LEXIS 63994, at *2-4. The court determined that since the zoning board permitted the congregation to apply for a variance and the congregation had not done so before filing its claim in federal court, the congregation's claims were unripe. *Id.* at *5. Similarly, in *Grace Community Church*, the Sixth Circuit determined that a church's failure to obtain reconsideration or appeal from a planning commission's revocation of a variance rendered the church's RLUIPA and equal protection claims not ripe for consideration by federal courts. 544 F.3d at 612, 617. Finally, in *Murphy*, the plaintiffs conducted regular prayer meetings in their residence that drew as many as 60 people. 402 F.3d at 345. When neighbors complained, a zoning commission issued an informal notice to the plaintiffs that the meetings violated the zoning ordinance. *Id.* In response, the plaintiffs filed suit. *Id.* After the suit was filed, the town zoning officer issued a cease and desist order to the plaintiffs. *Id.* The Second Circuit determined that the plaintiff's failure to appeal the cease and desist order or seek a variance rendered the plaintiff's First Amendment and RLUIPA claims unripe. *Id.*

In reaching its conclusion in *Murphy*, the Second Circuit set forth four considerations that favor applying *Williamson's* prong-one ripeness standard to disputes arising from the application of local zoning ordinances to religious institutions:

> First . . . the *Williamson County* Court reasoned that requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record. Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel. Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible. Finally, since *Williamson County*, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern

more aptly suited for local resolution.

*Murphy*, 402 F.3d at 348 (citations omitted). Both the Third Circuit panel in *Congregation Anshei* and the Sixth Circuit found this reasoning persuasive. *See Congregation Anshei*, 2009 U.S. App. LEXIS 16266, at *7; *Grace Community Church*, 544 F.3d at 613-14. We too find the reasoning in *Murphy* persuasive and apply it here.

The two cases that the Church cites to persuade us to apply the *Step-Saver* standard only serve to highlight the flaw in the Church's theory. (*See* Doc. No. 12 at 8-9.) The first, *Peachlum v. City of York*, 333 F.3d 429, 431 (3d Cir. 2003), involved facial and as-applied challenges to a city ordinance regulating signage in residential areas. In *Peachlum*, the court decided that the plaintiff's claim was ripe notwithstanding her failure to obtain a final determination from the city's zoning hearing board. *See generally id.* An initial weakness in the Church's reliance on *Peachlum* is that the court applied *Williamson's* finality requirement and found that a final position had been reached notwithstanding the plaintiff's failure to obtain a decision from the city's zoning hearing board. *See id.* at 438 (determining that the city had reached a final position "'that inflict[ed] an actual, concrete injury' on the plaintiff" (quoting *Williamson*, 473 U.S. 172)). The court's reliance on *Williamson* aside, *Peachlum* is inapposite for several reasons. *Peachlum* primarily involved facial challenges to the ordinance. *Id.* The policy considerations raised by such challenges—for instance, the "concern that a person will merely comply with an illegitimate statute rather than be subject to prosecution"—favor a relaxed view of ripeness. *See id.* at 435 (citing *Presbytery of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1467 (3d Cir. 1994)). In fact, the court noted that "'as applied' free speech claim[s] [have] never been deemed subject to administrative finality doctrine by our court or any other court of appeals . . . ." *Id.*

The Church has identified no such concerns here, and none are apparent in the Amended Complaint or the motions before us. Moreover, the plaintiff in *Peachlum* was subject to several adverse actions by the city, including a cease and desist order and civil enforcement actions resulting in two judgments against the plaintiff. *See id.* at 432-33. Here, the Church has not identified any adverse actions taken by the Township. Finally, the plaintiff in *Peachlum* was unable to pay the "substantial appeal fee" necessary to move her case forward, and the city refused to grant the plaintiff a fee waiver, leaving her subject to continued fines. *Id.* at 437. Nothing before us indicates that the Church was in any way hindered in pursuing remedies at the local level.

The second case that the Church relies on to urge us not to apply the *Williamson* prong-one ripeness standard, *Stockham Interests, LLC, v. Borough of Morrisville*, No. 08-3431, 2008 U.S. Dist. LEXIS 93152, at *10-14 (E.D. Pa. Nov. 12, 2008), is less pertinent to the Church's case than *Peachlum*. In *Stockham*, the plaintiffs brought facial and as-applied challenges to a borough zoning ordinance pertaining to adult entertainment. *Id.* at *3. The court determined that the plaintiffs' claim was ripe for review because it was a facial challenge to the ordinance. *See id.* at *12 (citing *County Concrete*, 442 F.3d at 163). Moreover, the plaintiffs had applied for a variance and obtained a final decision regarding their request from the zoning board. *Id.* Finality was not an issue, and the court did not discuss *Williamson* or *Step-Saver*. *See id.*

The Church's position that this case is a pre-enforcement action seeking declaratory and injunctive relief and is therefore subject to the *Step-Saver* analysis is at odds with the Third Circuit's admonition that the federal courts should not serve as "super land-use boards of appeals." *See Sameric*, 142 F.3d at 598. Since the Church has not stated a facial challenge to the

11

Township ordinances, the Church is essentially asking this Court to rule on the application of those ordinances before the Township itself has had the opportunity to do so. Such a request would have us serve as a super land-use board of appeals, if not a land-use board of first impression. This, we refuse to do.

### B. The Church's Claim is not Ripe

The Township has not reached a final determination regarding the Church's ability to operate an emergency shelter at its facilities. There appear to be two separate, preliminary determinations by the Township that would place some limitation on the Church's ability to operate a shelter. First, there is the Zoning Officer's December 10, 2007, letter. (Doc. No. 10-4.) The Zoning Officer's determination was made pursuant to the Pennsylvania Municipalities Planning Code ("MPC"), 53 Pa. Cons. Stat. §§ 10101, *et seq.*, and the Township's ordinances, Twp. of N. Coventry Ordinances (the "Township Ordinances"), pt. II, ch. 370, *et seq.* In reaching her conclusion, the Zoning Officer had to construe the ordinance at issue "in accordance with its literal term." Township Ordinances, § 370-128. The Zoning Officer did not "have the power to permit any construction or change of use which does not conform" to the language in the ordinance. *See id.* Parties who disagree with a zoning officer's determination may appeal to the ZHB, which has "exclusive jurisdiction to hear and *render final adjudications* in . . . [a]ppeals from the determination of the zoning officer . . . ." 53 Pa. Cons. Stat. § 10909.1(a)(3) (emphasis added). There is no dispute that the Zoning Officer's December 10, 2007, letter was appealable to the ZHB. *See N. Codorus Twp. v. N. Codorus Twp. Zoning Hearing Bd.*, 873 A.2d 845, 846-47 (Pa. Commw. Ct. 2005). Moreover, in situations where the Zoning Officer has not misapplied the zoning ordinance, a party may still seek relief from an ordinance's strictures by

12

applying to the ZHB for a variance. 53 Pa. Cons. Stat. § 10910.2 (providing that the ZHB "shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant"); *see also* Township Ordinances § 370-148. The Amended Complaint establishes that the Church was able to and did apply for relief from the Zoning Officer's letter, but later decided to withdraw its application.[3] (*See* Am. Compl. ¶¶ 17-19.) The Church has offered no explanation for its decision to withdraw its application.

The second preliminary determination is the Fire Marshal's December 10, 2007, letter. (*See* Doc. No. 10-5.) In that letter, the Fire Marshal informed the Church that under the International Fire Code, as adopted by the Pennsylvania Uniform Construction Act, 34 Pa. Code §§ 401, *et seq.*, the Church would need to install fire sprinklers if it intended to provide sleeping facilities for more than 16 people. (*See id.*) *See also* Township Ordinances § 181-1(B)(1) (establishing the Fire Marshal as the Township official responsible for implementing the International Fire Code, as adopted in the Pennsylvania statutes and the Township Ordinances). The Amended Complaint does not specifically identify the Fire Marshal's determination as a basis for the harms alleged, and we do not know the Church's position with regard to it. For example, we do not know whether the Church intended to offer sleeping facilities to more than 16 people per night. In any event, the Fire Marshal's determination was not final because it was subject to review by the Code Hearing Board ("CHB"). *See* 35 Pa. Cons. Stat. §§ 7210.501(c)(2), (5) (requiring municipalities to establish boards of appeals to hear claims "that the true intent of this act or regulations legally adopted under this act have been incorrectly

---

[3] The allegations in the Amended Complaint are unclear as to whether the Church sought to appeal the Zoning Officer's determination to the ZHB or whether the Church was requesting a variance. (*See* Am. Compl. ¶ 17.) For our present purposes, it does not matter.

interpreted, the provisions of this act do not fully apply or an equivalent form of construction is to be used"); 34 Pa. Code § 403.121 ("A municipality which has adopted an ordinance for the administration and enforcement of the Uniform Construction Code . . . shall establish and appoint members to serve on a board of appeals . . . ."); Township Ordinances § 141-8(A) (establishing the CHB). Under the Township Ordinance, the CHB may also grant variances. *See* Township Ordinances § 141-8(B)(2) ("The Code Hearing Board may grant a variance from the strict application of [the International Fire Code]."). The Amended Complaint is silent on what, if any, actions the Church took to obtain a final determination from the CHB. Considering the sum of the allegations in the Amended Complaint, it does not appear that the Church took any action to obtain a final determination regarding the Fire Marshal's letter.

In the absence of final determinations by the Township, each of the considerations identified by the Second Circuit in *Murhpy* weighs against finding that Church's claims are ripe. With regard to the first consideration, the Amended Complaint presents us with an undeveloped record. *See Murphy*, 402 F.3d at 348; *see also Grace Community Church*, 544 F.3d at 616 (identifying the fact that "the record [was] devoid of any efforts by the [c]hurch to complete the factual record" as a basis for finding that the church's claims were not ripe). For example, we do not know whether the Zoning Officer and the Fire Marshal made their preliminary determinations based on an accurate understanding of the Church's proposed use. Moreover, the ZHB and CHB are in a better position than this Court to decide whether the Zoning Officer and the Fire Marshal accurately applied the Township Ordinances. With regard to the second and third considerations, the Church's failure to appeal the Zoning Officer's and the Fire Marshal's determinations is problematic as is its failure to seek a variance. Since the Church did not pursue

either form of relief, we do not know how the Township would have applied the ordinances to the parcel. More importantly, the Zoning Officer had a duty to apply the ordinances mechanically according to their literal terms. *See* Township Ordinances § 370-128. By withdrawing its application for relief, the Church deprived itself of the opportunity to present its proposed use to a body that could deviate from the terms of the ordinance. *See id.* § 370-148.

       The Church's decision to forego the local review process also forced a constitutional issue in contravention of "the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible." *See Murphy*, 402 F.3d at 349 (citations omitted). As the Third Circuit panel observed in *Congregation Anshei*, a religious institution does not "suffer[] any constitutional injury simply because it must apply for a variance . . . ." 2009 U.S. App. LEXIS 16266, at *12. This observation is especially apt here because the Zoning Officer notified the Church that "[a] Notice of Violation of the . . . Zoning Ordinance will not be given to [the] Church pending the outcome of the variance procedure." (Am. Compl., Ex. A.) The Church has identified nothing that, in the light of this letter, would have made proceeding with the variance process harmful or unduly burdensome. The weight of the first three *Murphy* considerations add to the federalism concerns raised by the fourth. The Township is in the best position to interpret and apply its ordinances, and we will not deprive it of the chance to do so. *See Murphy*, 402 F.3d at 348 (citing *Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1291 (3d Cir. 1990)); *see also Congregation Anshei*, 2009 U.S. App. LEXIS 16266, at *13 (stating policy against federal courts becoming "super land-use boards of appeals") (citation and quotation marks omitted).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion will be granted.

BY THE COURT:

<u>/s/ *R. Barclay Surrick*</u>

U.S. District Judge